129 N.J. Super. 105 (1974)
322 A.2d 467
GEORGE E. LOGAN, PLAINTIFF-RESPONDENT AND CROSS-APPELLANT,
v.
TOWNSHIP OF NORTH BRUNSWICK, DEFENDANT-APPELLANT, AND LESLIE B. STRADER AND DIANE C. STRADER, DEFENDANTS-RESPONDENTS AND CROSS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued February 4, 1974.
Remanded February 21, 1974.
Decided June 18, 1974.
*106 Before Judges HANDLER, MEANOR and KOLE.
Mr. Douglas T. Hague argued the cause for plaintiff-respondent and cross-appellant George E. Logan (Messrs. Wilentz, Goldman & Spitzer, attorneys).
Mr. William V. Kennedy argued the cause for defendant-appellant Township of North Brunswick (Messrs. Colquhoun, Kennedy & Brogan, attorneys).
*107 Mr. Henry H. Rubenson argued the cause for defendants-respondents and cross-respondents Leslie B. Strader and Diane C. Strader.
PER CURIAM.
Plaintiff was employed as a tow truck operator. On December 24, 1970, a day of particularly hazardous driving conditions, he was called to remove a pickup truck from atop a wall dividing the north and southbound lanes of a bridge on U.S. Route 1, North Brunswick, New Jersey. He towed the pickup to the shoulder of the northbound lanes near the crown of the bridge, with both vehicles facing north and the tow truck ahead of the pickup. Traffic in both directions had been halted by North Brunswick police at the scene. The bridge surface was especially slippery. The local police had requested the New Jersey State Highway Department, which had jurisdiction over the maintenance of the road, to supply a sand truck.
Because of the accident involving the pickup the police, with the use of flares, had channeled northbound traffic into the outside of the three northbound lanes of travel. The first vehicle in line near the foot of the bridge awaiting the resumption of northbound travel was a dump truck owned by defendant Continental and driven by defendant Grasso. Behind the dump truck was a Buick driven by defendant Leslie Strader in which his wife Diane was a passenger.
After stopping his tow truck and the pickup on the northbound shoulder of the bridge, plaintiff unhooked the tow chain and was standing between the rear of the tow truck and the front of the pickup attempting to place the chain in the body of the tow truck. While he was thus engaged, the police permitted northbound traffic to resume. As plaintiff was standing on the shoulder opposite the left rear of his tow truck, Grasso's dump truck proceeding north skidded, with the result that the right rear of the dump truck grazed the left side of the tow truck. Very shortly thereafter, Strader's Buick, which had also been waved on by the police, *108 skidded on the icy pavement, resulting in a collision between the right front of the Buick and the left rear of the plaintiff's truck. It was in this latter accident that plaintiff was injured. The evidence is clear that he was standing on the shoulder of the road throughout these events.
At the close of the proofs Grasso and Continental obtained judgment in their favor, and no complaint is now made of that ruling. Motions for judgment by defendants Strader and Township of North Brunswick were denied, as was plaintiff's motion to strike the defense of contributory negligence, the trial court reasoning that the jury could find plaintiff negligent for stopping at a hazardous location.
In answer to special questions, R. 4:39-1, the jury found Strader not negligent, the township negligent and the plaintiff contributorily negligent. Judgment for all defendants was entered. On post-trial motion; however, the trial court held that the defense of contributory negligence should have been stricken. Hence, a judgment of liability in favor of plaintiff and against township followed. After a damage trial these appeals ensued. Initially we had some question whether the trial court applied the correct standard of assessment of the proofs in entering judgment n.o.v. Upon our remand the trial court held unequivocally that there was insufficient evidence to present a factual issue on the plaintiff's contributory negligence and this resulted in a reaffirmation of judgment n.o.v. for the plaintiff.
The first point raised by the township is that the court below had no power to enter judgment n.o.v. for plaintiff since during the liability trial plaintiff never moved for judgment in his favor. Citing Surkis v. Strelecki, 114 N.J. Super. 596 (App. Div. 1971), certif. den. 59 N.J. 266 (1971), and Poland v. Parsekian, 81 N.J. Super. 395 (App. Div. 1963), certif. den. 41 N.J. 520 (1964), it is argued that a motion for judgment at the close of the proofs is an essential prelude to judgment n.o.v. It flows from this, so the argument runs, that since plaintiff made only a motion *109 to strike the defense of contributory negligence and did not move for judgment in his favor at the close of the proofs, he could not later obtain judgment n.o.v.
We need not tarry long over this argument. Had there been a general verdict for defendants, the later determination of error in submitting the defense to the jury would have resulted in a new liability trial as to all parties and issues. Perhaps the major rationale of the special verdict procedure, R. 4:39-1, is the avoidance of full-scale retrials by permitting isolation of error and retrial only of those issues infected with it. Nylander v. Rogers, 41 N.J. 236, 240 (1963). R. 4:40-2 permits judgment n.o.v.  that is, it allows a court to do post-trial what it should have done pursuant to motion made at the close of the proofs. The spirit of our rules concerning special verdicts and judgment n.o.v. would be frustrated if R. 4:40-2 did not encompass the liberty to correct after trial the erroneous denial of a motion to strike a defense as well as the erroneous denial of a motion for judgment. We point out, too, that the motion of plaintiff during trial, limited as it was to the defense of contributory negligence, constituted a frank recognition that fact issues existed as to the liability of Strader and the township. Were we to honor the township's argument plaintiffs could in the future avoid the dilemma by the simple device of coupling motions to strike affirmative defenses with specious motions for judgment. Thus we hold that R. 4:40-2 permits a plaintiff to move for and obtain judgment n.o.v. where that result flows from a combination of the post-trial correction of error in refusing to strike an affirmative defense and the determinations made during trial on other issues.
We agree with the determination of the trial court that there was insufficient evidence of plaintiff's contributory negligence to permit jury consideration of that issue. See Dolson v. Anastasia, 55 N.J. 2, 5-6 (1969). The only thesis upon which the defense was permitted involved the thought that plaintiff might be considered negligent for stopping on *110 the shoulder of the bridge rather than some allegedly less hazardous spot further north. We do not believe that reasonable minds could find this argument acceptable. There was uncontradicted evidence that plaintiff believed the pickup to be operable under its own power; there was, of course, an element of danger in continuing the tow longer than necessary on the icy road, and traffic had ben stopped to permit plaintiff's removal of the pickup. There was no evidence to the effect that plaintiff had advance notice that the police would permit traffic to resume before he had unhitched and was safely in his tow truck.
We reject the township's argument that it was immune from suit because of the actions of its police officers in permitting northbound traffic to resume. Police and consequently their municipal employers may be held liable for accidents proximately resulting from negligent signalling of traffic. Czyzewski v. Schwartz, 110 N.J. Super. 255, 261 (App. Div. 1970); see also, Bergen v. Koppenal, 97 N.J. Super. 265, 269 (App. Div. 1967), mod. on other grounds 52 N.J. 478 (1968), and Gilday v. Hauchwit, 91 N.J. Super. 233, 251 (App. Div. 1966), dissenting opinion adopted 48 N.J. 557 (1967). Here there had been several accidents on the bridge, in both north and southbound lanes, due to the icy road surface. North of the scene of this plaintiff's accident, a sports car had previously skidded off the northbound lanes, and this event was known to the police. Plaintiff at the time traffic was permitted to resume was in full view attending to the unhitching operation on the shoulder of the road. The jury reasonably could have come to the conclusion that the police were negligent in not further delaying traffic until the plaintiff had achieved a position of greater safety.
We have examined the remaining contentions and find them without merit.
Affirmed.