STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v.
JAMES ATHORN, Jr., DEFENDANT-RESPONDENT.

Argued November 8, 1965—Decided January 24, 1966.

*Mr. Philip R. Glucksman,* Assistant Prosecutor, argued the cause for plaintiff (*Mr. Brendan T. Byrne,* Prosecutor of Essex County, attorney; *Mr. Philip R. Glucksman* on the brief).

*Mr. Edward G. D'Alessandro* argued the cause for defendant (*Messrs. Friedman & D'Alessandro,* attorneys; *Mr. Edward G. D'Alessandro* on the brief).

The opinion of the court was delivered by

PROCTOR, J. This is an interlocutory appeal by the State from the trial court's order directing an interrogation of the jurors who had returned a verdict of guilty against the defendant. The Appellate Division granted the State's motion for leave to appeal, and while the appeal was pending we certified the case.

On September 28, 1964, a jury in the Essex County Court found the defendant, a Newark police officer, guilty of extortion and misconduct in office. About a month later, the court received notice from the prosecutor that one of the jurors alleged that the verdict had been improperly rendered. As a result, the trial judge summoned the juror, Samuel Molee, and questioned him in the presence of the defendant's attorney and the prosecutor.

Molee testified that the jury balloted three times, twice eleven to one and finally unanimously, to find the defendant guilty, Molee having been the only holdout. During the course of the deliberations, some of the jurors remarked, "cops take bribes," the foreman giving newspapers as the source of this knowledge. Molee further testified that one of the women jurors called him "stubborn" and several exclaimed, " 'Oh, my God!' like they were looking to get home or something" when he persisted in his not-guilty vote. He also claimed that he was "tricked" into voting guilty by a juror who seemed to agree with him that the defendant was

innocent but who then cast his vote for guilty. Further, he said he was disturbed because the trial judge frequently called the defense counsel up to the side bar but never the assistant prosecutor. Finally, Molee asserted that he misunderstood the trial court's instruction that the jury must reach a unanimous verdict; he stated that at the time of the trial he had never heard of a "hung jury" but that had he been aware of that possibility he would never have changed his vote to guilty. However, Molee admitted that when the jury was polled he again voted to find the defendant guilty.

On the basis of the above testimony the trial court concluded that it would interrogate the other jurors concerning Molee's allegations. On the State's motion the order to that effect was stayed by the Appellate Division, and the propriety of the order is the subject of this appeal.

■ We do not believe that Molee's allegations, even if they were to be substantiated by the testimony of the other jurors, would be a sufficient basis on which the conviction could be set aside, and thus the trial court's order must be reversed. Calling back jurors for interrogation after they have been discharged is an extraordinary procedure which should be invoked only upon a strong showing that a litigant may have been harmed by jury misconduct.

If verdicts could be easily set aside as a result of an investigation into secret jury deliberations, disappointed litigants would be encouraged to tamper with jurors, to harass them and to employ fraudulent practices in an effort to induce them to repudiate their decisions. Moreover, an open invitation would be extended to any disgruntled juror who might choose to destroy a verdict to which he had previously assented. See, *e. g., McDonald v. Pless,* 238 *U. S.* 264, 35 *S. Ct.* 783, 59 *L. Ed.* 1300 (1915); *Hutchinson v. Consumers Coal Co.,* 36 *N. J. L.* 24, 25–26 (*Sup. Ct.* 1872); *State v. Gardner,* 230 *Or.* 569, 371 *P. 2d* 558 (*Sup. Ct.* 1962); *People v. Van Camp,* 356 *Mich.* 593, 97 *N. W. 2d* 726 (*Sup. Ct.* 1959); *Sanitary Dist. of Chicago v. Cullerton,* 147 *Ill.* 385, 35 *N. E.* 723 (*Sup. Ct.* 1893).

■ The secrecy surrounding jury deliberations is necessary not only to prevent the unsettling of verdicts after they have been recorded, but also as an aid to the deliberative process itself. Each juror should be encouraged to state his thoughts freely, good or bad, so that they may be weighed by the other jurors. *State v. LaFera,* 42 *N. J.* 97, 106 (1964). "Freedom of debate might be stifled and independence of thought checked if jurors were made to feel that their arguments and ballots were to be freely published to the world." *Clark v. United States,* 289 *U. S.* 1, 13, 53 *S. Ct.* 465, 469, 77 *L. Ed.* 993, 999 (1932). *Cf. R. R.* 1:25A.

■■ Thus, our courts and those of other jurisdictions have generally refused to accept from jurors, for the purpose of impeaching a verdict, any evidence of the discussion which they may have had among themselves while considering their verdict. See *McDonald v. Pless, supra; Bragg v. King,* 104 *N. J. L.* 4 (*Sup. Ct.* 1927) ; *Queen v. Jennings,* 93 *N. J. L.* 353 (*Sup. Ct.* 1919) ; *Peters v. Fogarty,* 55 *N. J. L.* 386 (*Sup. Ct.* 1893) ; *Lindauer v. Teeter,* 41 *N. J. L.* 255 (*Sup. Ct.* 1879) ; *Hutchinson v. Consumers Coal Co., supra; Pulitzer v. Martin S. Ribsam & Sons Co.,* 19 *N. J. Misc.* 233, 18 *A. 2d* 726 (*Sup. Ct.* 1941) ; *Marconi v. MacElliott,* 8 *N. J. Misc.* 69, 148 *A.* 392 (*Sup. Ct.* 1930) ; *Davis v. United States,* 47 *F. 2d* 1071 (5 *Cir.* 1931) ; *R. v. Thompson* [1962] 1 *All E. Rep.,* 65 (1961) ; 8 *Wigmore, Evidence* (*McNaughton rev.* 1961), §§ 2346 to 2349 (see cases collected in footnote 2 at *pp.* 682-690) ; *McCormick, Evidence* § 68 (1954). However, no inflexible rule can be laid down because cases do arise where "the plainest principles of justice" demand that a new trial should be directed upon a proper showing. *Mattox v. United States,* 146 *U. S.* 140, 148, 13 *S. Ct.* 50, 52, 36 *L. Ed.* 917, 920 (1892) ; *United States v. Reid,* 53 *U. S.* 361, 366, 12 *How.* 361, 366, 13 *L. Ed.* 1023, 1025 (1851). For this reason we have recognized two exceptions to the general rule that jury verdicts shall not be disturbed because of what may have been said by jurors during their deliberations. First, where a juror informs (or misinforms) his colleagues

in the jury room of facts about the case, based on his personal knowledge, which facts were not introduced into evidence at the trial, the resultant verdict may be set aside. *Brandimarte v. Green,* 37 *N. J.* 557 (1962) ; *State v. Kociolek,* 20 *N. J.* 92, 58 *A. L. R. 2d* 545 (1955) ; see *Capozzi v. Butterwei,* 2 *N. J. Super.* 593 (*Law Div.* 1949). And, where a juror by his comments in the jury room manifests racial or religious bigotry against a defendant, we have upheld the trial court's action in granting a new trial. *State v. Levitt,* 36 *N. J.* 266, 91 *A. L. R. 2d* 1112 (1961). "It is a vicious thing to convict a man out of bigotry, and hence, despite the strong policy against probing the motivations which inhere in a jury's verdict, 8 *Wigmore, Evidence* (*McNaughton rev.* 1961) § 2349, *p.* 681, we will hear a charge that a juror manifested such bias in his consideration of the case." *State v. LaFera, supra,* 42 *N. J.,* at *p.* 110. See also Comment, 25 *U. of Chi. L. Rev.* 360, 369 (1958).

■ In the present case we find no reason for departing from the general rule that evidence of expressions or arguments of jurors made during their deliberations may not be used to impeach the verdict. There is nothing in Molee's testimony to suggest that a juror had expressed personal knowledge of any facts concerning the defendant which were not adduced in evidence. See *Brandimarte v. Green, supra,* and *Stale v. Kociolek, supra.* Although some of the jurors may have stated during the deliberations that "cops take bribes," our reading of the record leads us to conclude that the statements were not manifestations of bias against the defendant because he was a police officer but simply observations by certain jurors that in the past they have heard of instances where police officers had accepted bribes. Considering today's broad coverage of all forms of news media it would be virtually impossible to find twelve jurors for any criminal trial who have not read or heard of events similar to those in the case actually before them. *Cf. People v. McCaffrey,* 118 *Cal. App. 2d* 611, 258 *P. 2d* 557 (*D. Ct. App.* 1953).

■ With regard to Molee's claim that he misunderstood the trial court's instructions, it has been repeatedly held that such a claim will not be a ground upon which a juror can impeach his own verdict. See, *e. g., Bragg v. King, supra; Walker v. United States,* 298 *F.* 2d 217, 226 (9 *Cir.* 1962); *Rotondo v. Isthmian Steamship Company,* 243 *F.* 2d 581, 583 (2 *Cir.* 1957); *State v. Stump,* 254 Iowa 1181, 119 *N. W.* 2d 210, 222-223 (*Sup. Ct.* 1963).

■ Molee's allegations that he was "tricked" by another juror into voting guilty, that one of the women jurors called him "stubborn," that other women jurors looked at him as if "they were looking to get home or something," and that he was bothered by the trial judge's side bar conferences with defense counsel are clearly frivolous and certainly do not warrant any further interrogation of the jurors. A court should not investigate the thought processes which induced a particular juror to join in a verdict. Moreover, there is nothing in Molee's testimony indicating that he voted for a guilty verdict because his will was overborne by the improper actions of other jurors. It is to be expected that in the interplay of personalities attending a jury's deliberations there will be occasions when some jurors will give vent to feelings of exasperation or frustration. The expression of these feelings should not be the basis upon which a juror may impugn the verdict, particularly a juror who, like Molee, assented to the jury's decision when polled in open court. See *People v. Van Camp, supra; Brinsfield v. Howeth,* 110 *Md.* 520, 73 *A.* 289 (*Ct. App.* 1909).

The order of the trial court is reversed.

*For reversal* — Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN —7.

*For affirmance*—None.