J-S67004-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
                                  :          PENNSYLVANIA
                                  :
          v.                   :
                                  :
                                  :
ELIJAH SCOTT                  :
                                  :
          Appellant         :  No. 524 EDA 2017

Appeal from the Judgment of Sentence September 15, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0009111-2011

BEFORE:  OTT, J., NICHOLS, J., and STRASSBURGER[*], J.

MEMORANDUM BY OTT, J.:              **FILED FEBRUARY 21, 2019**

Elijah Scott appeals from the judgment of sentence imposed on September 15, 2016, in the Court of Common Pleas of Philadelphia County. A jury convicted Scott of attempted murder, aggravated assault, firearms not to be carried without a license, carrying firearms on public streets in Philadelphia, and possessing an instrument of crime (PIC).[1] The trial court sentenced Scott to an aggregate term of 10 to 20 years' imprisonment. Contemporaneous with this appeal, counsel for Scott has filed a motion seeking permission to withdraw from representation and an *Anders* brief. *See Anders v. California*, 386 U.S. 738 (1967); *Commonwealth v. McClendon*, 434 A.2d 1185 (Pa. 981).  In the *Anders* brief, counsel identifies

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 901(a), 2702(a), 6101(a)(1), 6108 and 907, respectively.

the following claims as having possible merit:  (a) trial counsel was ineffective in failing to move for judgment of acquittal, (b) the evidence was insufficient to sustain the jury's verdict, (c) the trial court committed reversible error by not *sua sponte* vacating the jury's guilty verdict, (d) a new trial is warranted because the prosecutor interfered with Scott's right to call Keisha Davis as a defense witness, (e) the trial court committed an abuse of discretion by denying a motion for mistrial and an objection after the prosecutor asked the complainant if he stated the previous day he was afraid to testify, and (f) the trial court committed an abuse of discretion by overruling objections to inadmissible hearsay.  Scott has filed a *pro se* response to the **Anders** brief regarding these claims and asserts ineffective assistance of both trial and appellate counsel.  For the following reasons, we affirm the judgment of sentence and grant counsel's motion seeking permission to withdraw.

The procedural history and facts of this case are well-known to the parties.  Therefore, we simply state, relevant to the issues identified in the **Anders** brief, the following background.

Scott's convictions stem from the shooting of Gary Francis, Jr. (the victim), on April 8, 2011, at about 1:00 a.m.  Following the shooting, the victim was taken to a nearby hospital. The victim spent two months recovering from numerous gunshot wounds and suffered permanent injuries.  The victim provided details of the shooting and identified Scott as his assailant in a written statement he gave to Detective Vincent Parker on April 19, 2011, and at the August 9, 2011 preliminary hearing.

In his statement, the victim described the incident:

> I had just left the Hide Away Bar at Cobb and Catherine. While I was walking, an older black Cadillac pulled up at 61st and Christian Street. The guy Feek got out the front passenger door and asked me to go robbing with them. I couldn't see who else was in the car. I told Feek no. And that's when Feek pulled out a dark gun and said to me, Take this with me. Feek shot the gun at me. And I heard the first shot go by my right ear. I think it grazed my ear. I started twisting my body so he couldn't shoot me. But he shot me in the stomach and chest. He shot at me and then he got back in the black Cadillac and the car took off. It was on 61st Street. I dropped my keys and I called the police from my cell phone. The cops came and took me to the hospital.

N.T, 6/29/2016, at 63-64; Commonwealth Exhibit 4.[2]

At the time he gave the statement, the victim also identified a photograph of Scott, and stated he knew the person in the photograph as "Feek." In addition, he stated he believed Scott shot him because he and Scott had fought about a week earlier in the Hide Away Bar over a cell phone belonging to a barmaid named Keisha. *See* N.T., 6/29/2016, at 70-71, 74.

In October, 2014, during Scott's first trial,[3] the victim testified he could not identify any person in the courtroom as the person who shot him. However, the victim testified he was shot by someone who had just emerged from a car. *See id.* at 102-105. At the first trial, the victim also testified he and Scott would see each other at the Hide Away Bar. *See id.* at 113. At Scott's 2016 trial, the victim testified he could not recall any details of the

---

[2] In the statement, the name of the victim's shooter is spelled "Feke."

[3] Scott's October, 2014, trial ended in a mistrial.

incident, did not see who shot him, and also stated he never went to the Hide Away Bar. *See id*. at 38, 41, and 114. The Commonwealth proceeded to question the victim, using the written statement he gave to Detective Parker and his preliminary hearing testimony.

Scott's second trial ended on July 1, 2016, when the jury convicted Scott as stated above. Following sentencing, Scott filed a post sentence motion that was denied by operation of law. This appeal followed.[4, 5]

When counsel files a petition to withdraw and accompanying *Anders* brief, we must first examine the request to withdraw before addressing any of the substantive issues raised on appeal. *See Commonwealth v. Bennett*, 124 A.3d 327, 330 (Pa. Super. 2015). enumerated Here, our review of the record reveals counsel has substantially complied with the requirements for

---

[4] The record reflects counsel filed a notice of appeal on January 19, 2017, before the post sentence motion was denied by operation of law on January 25, 2017. In this regard, Pennsylvania Rule of Appellate Procedure 907(a)(5) provides:

> A notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof.

Pa.R.A.P. 907(a)(5). *See Commonwealth v. Little*, 879 A.2d 293, 296 n.6 (Pa. Super. 2005) (Superior Court would entertain appeal that was filed prematurely when petition for reconsideration was still pending because order denying reconsideration was subsequently entered).

[5] Appellate counsel filed a Pa.R.A.P. 1925(c)(4) statement of intent to file an *Anders* brief. Counsel's Rule 1925(c)(4) statement indicated Scott's wish to raise six listed issues on appeal. The Honorable Sierra Thomas Street did not file an opinion.

withdrawal outlined in **Anders, supra**, and its progeny. Specifically, counsel requested permission to withdraw based upon his determination that the appeal is frivolous, filed an **Anders** brief pursuant to the dictates of **Commonwealth v. Santiago**, 978 A.2d 349, 361 (Pa. 2009), furnished a copy of the **Anders** brief to Scott and advised Scott of his right to retain new counsel or proceed *pro se*. **See Commonwealth v. Cartrette**, 83 A.3d 1030, 1032 (Pa. Super. 2013) (*en banc*). As stated above, Scott has filed a response to the **Anders** brief. Accordingly, we will proceed to examine the record and make an independent determination of whether the appeal is wholly frivolous. **See Commonwealth v. Yorgey,** 188 A.3d 1190, 1197 (Pa. Super. 2018) (*en banc*).

The first claim identified in the **Anders** brief is an ineffective assistance claim alleging, "[t]rial counsel was ineffective for failing to move for a judgment of acquittal because the complainant testified that [Scott] did not shoot him and the conviction was predicated on the complainant's out of court statements, which [Scott] contends constituted inadmissible hearsay." **Anders** Brief at 15. In addition, Scott, *pro se*, asserts trial counsel was ineffective in failing to object on hearsay grounds to the testimony and statements of the victim and the victim's father. **See** Scott's Response at 24. These ineffectiveness claims, however, are premature. In **Commonwealth v. Holmes**, 79 A.3d 562 (Pa. 2013), the Pennsylvania Supreme Court reaffirmed the general rule first set forth in **Commonwealth v. Grant**, 813

A.2d 726 (Pa. 2002), that "claims of ineffective assistance of counsel are to be deferred to PCRA review; trial courts should not entertain claims of ineffectiveness upon post-verdict motions; and such claims should not be reviewed upon direct appeal." **Holmes, supra**, 79 A.3d at 576. Although there are three recognized exceptions to that general rule, no exception is applicable here.[6] Accordingly, these ineffectiveness claims are not cognizable on direct appeal and must await collateral review.

The second issue set forth in the **Anders** brief is a claim that the evidence was insufficient to sustain the jury's verdict because it was predicated solely on hearsay consisting of the out of court statements of the victim and because the Commonwealth failed to corroborate what was contained in the victim's out of court statements. This claim overlooks well settled case law and our Rules of Evidence.

_____

[6] The **Holmes** Court recognized two exceptions: (1) where the trial court determines that a claim of ineffectiveness is "both meritorious and apparent from the record so that immediate consideration and relief is warranted[;]" or (2) where the trial court finds "good cause" for unitary review, and the defendant makes a "knowing and express waiver of his entitlement to seek PCRA review from his conviction and sentence, including an express recognition that the waiver subjects further collateral review to the time and serial petition restrictions of the PCRA." **Holmes, supra**, 79 A.3d at 564, 577 (footnote omitted). A third exception was recently adopted by our Supreme Court for "claims challenging trial counsel's performance where the defendant is statutorily precluded from obtaining PCRA review." **Commonwealth v. Delgros**, 183 A.3d 352, 361 (Pa. 2018) ("[W]here the defendant is ineligible for PCRA review because he was sentenced only to pay a fine, we agree with Appellant that the reasoning in **Holmes** applies with equal force to these circumstances.")

Initially, it bears emphasis that the question of sufficiency is not assessed on a diminished record — we consider all evidence without consideration as to its admissibility. *See, e.g., Commonwealth v. Sanford*, 863 A.2d 428, 431-431 (Pa. 2004); *Commonwealth v. Gray*, 867 A.2d 560, 567 (Pa. Super. 2005).

Moreover, Pennsylvania Rule of Evidence 803.1(1) provides an exception to the rule against hearsay and permits the substantive admission of a prior inconsistent statement "if the declarant testifies and is subject to cross examination about the prior statement" and if it "was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition," if it "is a writing signed and adopted by the declarant," or if it "is a verbatim contemporaneous electronic recording of an oral statement." Pa.R.E. 803.1(1).

Furthermore, in *Commonwealth v. Brown*, 52 A.3d 1139, 1168 (Pa. 2012), the Pennsylvania Supreme Court adopted the view "to treat prior inconsistent statements of witnesses — who have testified at trial and were subject to cross-examination so that the finder-of-fact could hear the witnesses' explanations for making the out-of-court statements, and for their trial recantation — as sufficient evidence upon which a criminal conviction may properly rest if the finder-of-fact could, under the evidentiary circumstances of the case, reasonably credit those statements over the witness's in-court recantations." The *Brown* Court held:

[C]riminal convictions which rest only on prior inconsistent statements of witnesses who testify at trial do not constitute a deprivation of a defendant's right to due process of law, as long as the prior inconsistent statements, taken as a whole, establish every element of the offense charged beyond a reasonable doubt, and the finder-of-fact could reasonably have relied upon them in arriving at its decision. Prior inconsistent statements, which meet the requirements for admissibility under Pennsylvania law, must, therefore, be considered by a reviewing court in the same manner as any other type of validly admitted evidence when determining if sufficient evidence exists to sustain a criminal conviction.

*Id.*, 52 A.3d at 1171

After the victim's recantation at trial, pursuant to Pa.R.E. 803.1(1) and **Brown**, the victim's written statement that was signed and adopted by him, and the victim's preliminary hearing testimony, were admissible as substantive evidence and established the elements of the crimes with which Scott was charged. Consequently, we agree with counsel's assessment in the **Anders** Brief that an appeal on the sufficiency of the evidence is frivolous.

The third issue in the **Anders** Brief is a claim that the trial court committed reversible error by not *sua sponte* vacating the jury's guilty verdict given that the verdict was predicated on evidence recanted by the complainant and inadmissible hearsay evidence consisting of the prior statements of the complainant. This claim, while framed in the context of the duty of the trial court to arrest the judgment, represents a challenge to the sufficiency of the evidence identical to the second issue. Therefore, based upon our previous discussion, we agree with counsel that this issue is likewise frivolous.

The fourth issue identified in the **Anders** brief is the claim that a new trial is warranted because the prosecutor interfered with Scott's right to call Keisha Davis as a defense witness "by falsely telling [her] that [Scott's] trial was over and her testimony was no longer needed." **Anders** Brief at 21. This claim, however, is waived because it was not raised and preserved in the trial court. **See** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). On June 30, 2016, Ms. Davis was in court, but was not called by the Commonwealth to testify. **See** N.T., 6/30/2016, at 197. When trial counsel informed the court he wished to call Ms. Davis in the defense's case, she was not present, and the Commonwealth informed the court Ms. Davis would be made available to the defense on the following day. **See id.** at 195-197; N.T., 7/1/2016, at 3. Thereafter, Ms. Davis failed to appear in court on July 1, 2016, the last day of trial, the trial court refused trial counsel's request for a continuance, and trial counsel did not object or request a mistrial. **See** N.T., 7/1/2016, at 4. Accordingly, waiver applies, and, as such, this claim is frivolous. **See Commonwealth v. Kalichak**, 943 A.2d 285, 291 (Pa. Super. 2008) (holding that when an issue has been waived, "pursuing th[e] matter on direct appeal is frivolous").

The fifth issue set forth in the **Anders** brief is that the trial court committed an abuse of discretion by denying a motion for mistrial and an objection proffered after the prosecutor asked the victim if he stated the

previous day that he was afraid to testify, because the jury could have inferred that the victim was afraid to identify Scott because of threats made by Scott.

On cross-examination, in a line of questioning concerning the victim's recantation, trial counsel asked the victim whether he had spoken to his father about the case between the preliminary hearing and October, 2014 (the first trial), to which the victim replied, "No." N.T., 6/29/2016, at 165. On redirect, the Commonwealth questioned the victim about whether he spoke to his father about the case:

[COMMONWEALTH]: Now, counsel asked you if [you] ever recall speaking to your dad about this case. Do you remember that?

[THE VICTIM]: Yes.

[COMMONWEALTH]: Okay. And you have -- you never spoken [sic] to your dad about this case?

[THE VICTIM]: Correct.

[COMMONWEALTH]: Okay. You spoke to him in the hospital, correct?

[THE VICTIM]: I can't recall.

[COMMONWEALTH]: Okay. You don't recall?

[THE VICTIM]: No.

[COMMONWEALTH]: Do you recall talking to him about this case last night?

[THE VICTIM]: No.

[COMMONWEALTH]: Okay. Do you recall telling him that you didn't want to come to court today?

[THE VICTIM]: No.

[COMMONWEALTH]: Okay. Do you recall talking to him about the fact that you –

[DEFENSE COUNSEL]: I'm going to object to this. There's no basis in the record. There's no basis, in fact, as to this line of questioning. No foundation laid.

[THE COURT]: It may be outside the scope of your redirect.

[COMMONWEALTH]: Well, but it does -- I mean, he asked the question about whether he had ever spoken to his father about the case, at all, ever. Counsel asked the question.

[DEFENSE COUNSEL]: The question was did you ever speak to your father about this. That was my question.

[COMMONWEALTH]: Yeah, about this case was actually the question.

[THE COURT]: Overruled.

[COMMONWEALTH]: Do you recall talking to him about it?

[THE VICTIM]: No.

[COMMONWEALTH]: Okay. And you never told him last night that you didn't want to come to court?

[THE VICTIM]: No.

[COMMONWEALTH]: Okay. You never told him last night that you were scared?

[THE VICTIM]: No.

[DEFENSE COUNSEL]: I move for a mistrial, Your Honor. There's no basis of fact for that particular question.

N.T., 6/29/2016, at 198-200. The trial court then held an off-the-record sidebar discussion, after which it issued its ruling that overruled the objection and denied the mistrial motion.

"The scope of redirect is largely within the discretion of the trial court" and "when a party raises an issue on cross-examination, it will be no abuse of discretion for the court to permit re-direct on that issue in order to dispel any unfair inferences." *Commonwealth v. Dreibelbis*, 426 A.2d 1111, 1117 (Pa. 1981). Here, on cross examination, trial counsel asked the victim whether he had spoken to his father about the case. On redirect, the Commonwealth questioned the victim about whether he actually said nothing to his father, which was based upon the anticipated testimony of the victim's father that the day before he had spoken with his son who indicated he was scared and did not want to come to court. *See* N.T., 6/29/2016, at 274.[7] The

_____

[7] During direct examination of the victim's father by the prosecutor, the following exchange occurred:

Q. Did you -- did you have an opportunity to speak to your son last night?

A. Yes, I did.

Q. Okay. Were you aware that he did come to court yesterday?

A. Yes.

Q. Okay. Did he tell you anything about whether or not he wanted to come today?

A. Our initial conversation -- because I was unaware that he didn't come the first day. And when we spoke, he told me he was scared. He didn't want to come. He didn't want to relive it. He wanted to move on with his life. He's come a long way. And after that conversation with him, I spoke with him in detail and he showed up.

prosecutor's question had a good faith basis, did not accuse Scott of threatening the victim,[8] and the question was appropriate redirect examination. Therefore, the trial court acted within its discretion in overruling the objection and request for mistrial based upon the scope of redirect examination. Accordingly, this issue is frivolous.

The sixth and final claim is that the trial court abused its discretion by overruling objections to inadmissible hearsay. Specifically, Scott claims the Commonwealth introduced inadmissible hearsay when the trial court allowed Detective Parker to testify the victim remembered the statement he gave, stating Scott was the person who shot him. The detective stated the conversation took place in October, 2014 (the time of the first trial), in a court anteroom. Detective Parker testified that while Scott identified his prior statement, he stated that the part of his statement identifying Scott as the person who shot him was not correct. *See* N.T., 6/30/2016, at 43-46.

We agree with counsel that the challenge to Detective Parker's testimony is frivolous. As already discussed, Pa.R.E. 803.1(1) allowed the

_____

Q. Okay. And that was today, correct?

A. Yes.

N.T., 6/29/2016, at 274.

[8] Being scared to appear in court does not mean there has been a threat. In fact, as the victim's father testified, the victim was scared because he did not want to relive the memory of being shot. *See* N.T., 6/29/2016, at 274.

- 13 -

victim's prior inconsistent statement to be introduced as substantive evidence of Scott's guilt. Any error in admitting the detective's testimony that the victim remembered the signed, written statement in October, 2014, before trial, would be – at most – harmless error, since the detective testified the victim had stated the part of his statement identifying Scott as his shooter was incorrect. Hence, any possible harm was *de minimis*.

In sum, based on our review, we find all claims identified by counsel in the **Anders** brief and by Scott in his *pro se* response, excepting the ineffectiveness claims that are premature, are frivolous. Therefore, we affirm the judgment of sentence and grant counsel's motion to seeking permission to withdraw.

Judgment of sentence affirmed. Motion seeking permission to withdraw as counsel granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/21/19